## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RAYMOND J. DEL BIANCO,**<br><br>*Plaintiff,*<br><br>v.<br><br>**76 CARRIAGE COMPANY,** *et al.*<br><br>*Defendants.* | **Case No. 2:22-cv-01152-JDW** |

## <u>MEMORANDUM</u>

Even though 76 Carriage Company's buses and trolleys rolled to a stop during the pandemic-era shutdowns, Raymond Del Bianco kept going. That is, until he asked for a raise while his employer was still trying to recover from Covid-19's economic impact. That was the end of the line for Mr. Del Bianco, who contends that the company fired him because of his age. Mr. Del Bianco cannot prevail on his claims of age discrimination because another 62-year-old man took over his job duties. His claim for unpaid vacation time also fails because the employer had no contractual obligation to pay him for that time. I will grant summary judgment in favor of 76 Carriage Company on these claims.

## I.    BACKGROUND

### A.    Factual History

In 2006, Mr. Del Bianco started working for 76 Carriage Company d/b/a Philadelphia Trolley works ("PTW"), a transportation and tour provider in the Philadelphia

area. Mr. Del Bianco served as the company's Director of Business Development. When he was hired, Mr. Del Bianco signed a document titled: "Employment Agreement Between Philadelphia Trolley Works & Ray Del Bianco" (the "Employment Agreement"). The Employment Agreement provided for a "2 week annual paid vacation" after the first six months of his employment. (ECF No. 28-8 at PTW 0127.) For the most part, Mr. Del Bianco continued to work as PTW's Director of Business Development without incident.

When the Covid-19 pandemic struck, PTW's business came to a screeching halt. Initially, there was "zero business" and "zero revenue." (ECF No. 28-5 at 33:11-12.) During this "unprecedented time," PTW made changes to keep employees on the books, including a "massive" reduction in hours. (*Id.* at 32:8, 33:11.) From mid-March 2020 until the end of April 2021, Mr. Del Bianco worked just three days a week. According to Mr. Del Bianco, the business started to pick-up again in the Spring of 2021, and he started working in the office four days a week, at 4/5 of his prior salary.

On or about July 1, 2021, Mr. Del Bianco requested that PTW (1) pay his full salary for the four days that he was working or (2) increase his prior salary for him to return to working five days per week. PTW's President and CEO, Michael Slocum, rejected these proposals but decided to reinstate Mr. Del Bianco to working five days per week at his original, full salary. Mr. Del Bianco was not happy with this arrangement, and Mr. Slocum "felt that [Mr. Del Bianco] was not appreciative" of Mr. Slocum's efforts to bring him back

full time. (ECF No. 28-5 at 39:20-21.) As a result, Mr. Slocum reevaluated Mr. Del Bianco's role with the company and decided to terminate him on July 30, 2021.

PTW contends that it fired Mr. Del Bianco for a combination of reasons, including: (1) Covid-19's continued impact on operations, (2) Mr. Del Bianco not meeting expectations, (3) the lack of a need for his position, and (4) Mr. Del Bianco's ingratitude after PTW brought him back full time during a challenging economic time while other employees remained on reduced schedules. PTW paid Mr. Del Bianco two weeks' worth of severance pay following his termination, but it denied his request to be paid for 25 unused vacation days. At the time he was fired, Mr. Del Bianco was 62 years old.

Once Mr. Del Bianco was gone, a PTW sales associate named Tyrone Holt assumed some of Mr. Del Bianco's prior job duties, but he did not become Director of Business Development because PTW eliminated the position. Mr. Holt was also 62 years old. In January 2022, Mr. Holt announced his plans to retire. Mr. Slocum arranged for him to train two other PTW employees, Idayia Bredell and Katherine De Silva, how to do charter sales. Ms. Bredell was in her twenties at the time, and Mr. Del Bianco believed Ms. De Silva to be about 40 years old. Like Mr. Holt, neither one of these women became Director of Business Development. Instead, PTW "reorganized and revamped" its charter sales department after Mr. Holt's retirement. (ECF No. 26 at ¶ 48.[1])

---

[1] Mr. Del Bianco does not offer evidence to dispute this assertion from PTW's Statement of Undisputed Material Facts, so I treat it as conceded.

### B.    Procedural History

Mr. Del Bianco sued PTW and Mr. Slocum on March 25, 2022. He filed an Amended Complaint on May 26, 2022, asserting claims for age discrimination, hostile work environment, and retaliation in violation of the Age Discrimination in Employment Act ("ADEA") (Count I) and the Pennsylvania Human Relations Act ("PHRA") (Count II), a claim for unpaid vacation time under the Pennsylvania Wage Payment and Collection Law ("WPCL") (Count III), and other state law claims including civil conversion (Count IV), breach of fiduciary duty (Count V), and unjust enrichment / breach of implied-in-law quasi contract (Count VI). The Court granted Defendants' Motion to Dismiss Mr. Del Bianco's common law claims, leaving Counts I thru III. Now, Defendants seek summary judgment on Mr. Del Bianco's claims of age discrimination and alleged violation of the WPCL. The motion is ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A)-(B).

## III.    DISCUSSION

### A.    Age Discrimination In Employment Act

The familiar *McDonnell Douglas* framework applies to Mr. Del Bianco's claims of age discrimination under both the ADEA and PHRA. Pursuant to that test, Mr. Del Bianco must first establish a *prima facie* case of discrimination.  This requires him to establish that "(1) he is at least forty, (2) he is qualified for the job, (3) he suffered an adverse employment action, and (4) he was replaced by … someone else 'who was sufficiently younger so as to support an inference of a discriminatory motive.'"  *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quotation omitted).  Mr. Del Bianco cannot make out a *prima facie* case of age discrimination because he has not come forward with sufficient evidence to raise a question as to whether PTW replaced him with someone sufficiently younger.

Mr. Del Bianco was 62 years old when PTW fired him. Mr. Holt then assumed some of Mr. Del Bianco's job responsibilities, but not all of them. Mr. Holt was also 62 years old at the time. Mr. Holt did not become the Director of Business Development. In fact, no one took over the position because PTW eliminated the role. Mr. Holt continued to perform some of Mr. Del Bianco's prior job duties until he retired in 2022. None of these facts are in dispute, and they demonstrate that Mr. Del Bianco cannot establish a *prima facie* case of age discrimination because PTW did not replace him with someone younger.

Once Mr. Holt retired in early 2022, two younger women started working in the charter sales department. But that doesn't change things, for two reasons. *First*, I'm not required to look only to Mr. Del Bianco's final replacements—Ms. Bredell and Ms. De Silva—in making this determination. *See Sempeir v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995). Mr. Del Bianco has not presented any evidence, or argument, that PTW assigned his duties to Mr. Holt on a temporary basis "as a means of insulating [PTW] from ADEA liability." *McCarthy v. New York City Tech. Coll. of City Univ. of New York*, 202 F.3d 161, 165 (2d Cir. 2000).  As such, Mr. Holt's age is the proper focus, not the people who replaced him when he decided to retire months later. *Second*, even if I considered Ms. Bredell and Ms. De Silva's ages, there is no evidence that either woman (or both in combination) took over Mr. Del Bianco's role. Mr. Del Bianco argues that Ms. Bredell and Ms. De Silva "replaced" him (ECF No. 29-3 at 5, ¶ 2), but the only evidence he cites to support that claim is his own deposition testimony. Of course, he didn't work at PTW when

Ms. Bredell and Ms. De Silva took over for Mr. Holt, so he doesn't know what they were doing. That lack of personal knowledge makes his testimony on the subject inadmissible. In contrast, Mr. Slocum, who did still work at PTW at the time, testified that the company reorganized the department and that neither woman took over Mr. Del Bianco's role. Mr. Del Bianco does not offer admissible evidence to contradict Mr. Slocum's testimony. These facts would not lead a reasonable jury to conclude that PTW replaced Mr. Del Bianco with someone sufficiently younger to permit a reasonable inference of age discrimination, which means that Mr. Del Bianco cannot establish a claim of age discrimination.

### B.     Wage Payment And Collection Law

Pennsylvania's "Wage Payment and Collection Law provides employees a statutory remedy to recover wages and other benefits that are **_contractually_** due to them." *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (Pa. 1997) (citation omitted) (emphasis added). Thus, "[a] prerequisite for relief under the WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid." *Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 470 (E.D. Pa. 2013) (quotation omitted). "[A]bsent a formal employment contract or collective bargaining agreement, an employee raising a WPCL claim would have to establish, at a minimum, an implied oral contract between the employee and employer." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (Pa. Super. Ct. 2011), *aff'd*, 106 A.3d 656 (Pa. 2014). Mr. Del Bianco cannot prevail on his claim for unpaid

vacation days under the WPCL because he admits that he does not have a contract with PTW for these wages.

The Employment Agreement provides that Mr. Del Bianco was entitled to a "2 week annual paid vacation" after the first six months of his employment. (ECF No. 28-8 at PTW 0127.) But nothing in the Employment Agreement guarantees that PTW would pay Mr. Del Bianco for any unused vacation time once his employment came to an end. Indeed, Mr. Del Bianco admits that he "did not have a written contract with [PTW] entitling him to payment of accrued vacation at the time of his termination." (ECF No. 26 at ¶ 49; ECF No. 29-3 at ¶ 49; *see also* ECF No. 29-2 at 13 ("Many of Defendants' factual contentions are accurate about the lack of an employment contract providing for compensation for unused vacation ….").) No one at PTW ever told Mr. Del Bianco that he would be paid for any unused vacation days if he was terminated, and the PTW Employee Manual does not indicate that employees would be paid for unused vacation time upon separation from the company. (ECF No. 28-3 at 231:5-9; ECF No. 28-4.) Because it is undisputed that PTW had no contractual obligation to pay Mr. Del Bianco for any unused vacation time, he cannot prevail on his WPCL claim.

### C.    Remaining Claims

Mr. Del Bianco's Amended Complaint raises claims of a hostile work environment and alleged retaliation. (*See, e.g.*, ECF No. 10 at ¶¶ 1, 28-29, 31-32, 34, 39, 42-44, 46.) Those allegations were threadbare and conclusory, but PTW did not seek to dismiss them. In

addition, PTW did not move for summary judgment on the hostile work environment or
retaliation claims. However, it is not clear that Mr. Del Bianco is still pursuing these claims.
On the one hand, the following exchange seems to indicate that Mr. Del Bianco has
abandoned a hostile work environment or retaliation theory of discrimination:

> Q:   So is it fair to say that throughout your employment you were not
> discriminated against, or you don't believe you were discriminated
> against based on your age, but that the discrimination that is the
> subject matter of this lawsuit is based on your belief that the age
> discrimination allegation occurred solely in conjunction with your
> firing?
>
> A:   Yes to the latter. But with respect to the former, I can't give complete
> -- I can't give concrete examples of experiencing age discrimination
> during my tenure there. But who knows? I don't know. Discrimination
> is a very subtle, very -- very tricky thing.

(ECF No. 28-3 at 241:22 – 242:11.) On the other hand, Mr. Del Bianco contends in his
response brief that "Mr. Slocum's statements and world view with respect to age ... made
Plaintiff's work place environment a hostile environment, prompting his firing." (ECF No.
29-2 at 12.)

Mr. Del Bianco did not come forward with evidence to support his hostile work
environment or retaliation claims, but that's only because PTW did not move for summary
judgment on either claim. Given Mr. Del Bianco's deposition testimony, I suspect he does
not have evidence to support these claims, but I cannot say for sure. Thus, I will give Mr.
Del Bianco an opportunity to demonstrate why I should not enter summary judgment on
those claims, assuming he has a good faith basis to do so.

**IV.    CONCLUSION**

Mr. Del Bianco cannot establish a *prima facie* case of age discrimination because PTW assigned his duties to another 62-year-old employee after it terminated him. In addition, he cannot establish a violation of the WPCL because he admits that there is no contractual agreement that requires PTW to pay him for unused vacation time. As a result, I will enter summary judgment in favor of PTW on these claims, but I will afford Mr. Del Bianco a chance to demonstrate why summary judgment is not warranted as to his hostile work environment and retaliation claims. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

March 7, 2023